**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Johnson Sayonkon,                                             Civ. No. 12-27 (MJD/JJK)

          Petitioner,

v.                                                                         **REPORT AND**
                                                                   **RECOMMENDATION**
Scott Beniecke, Field Office Director,

          Respondent.

Johnson Sayonkon, Carver County Jail, 606 East 4th Street, Chaska, MN 55318, *pro se*.

Erika R. Mozangue, Esq., Friedrich A. P. Siekert, Esq., and Gregory G. Booker, Esq., Assistant United States Attorneys, counsel for Respondent.

## INTRODUCTION

This matter is before this Court on the Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2241 from a Person in the Custody of the Immigration Custom and Enforcement Agency (ICE) (Doc. No. 1 ("Pet.")).  For the reasons explained below, this Court recommends, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(b), that the Petition be denied as moot, and this action be dismissed.

## BACKGROUND

This case involves issues that arise when an individual in the custody of the immigration authorities must be removed from the United States according to the immigration laws, but immigration authorities are unable to effect that

removal. Until very recently, the United States Bureau of Immigration and Customs Enforcement ("ICE") detained Petitioner pending his removal to Liberia, as authorized by a June 16, 2011 Warrant of Removal. (*See* Doc. No. 1-1, Pet'r's Mem. in Supp. of Pet. ("Pet'r's Mem.") at 1–2; Doc. No. 9, Administrative Record ("AR") at 12 (Warrant of Removal); Doc. No. 10, Decl. of Eric O'Denius ("O'Denius Decl.") ¶¶ 3–4; Doc. No. 14, Decl. of Friedrich A. P. Siekert ("Siekert Decl.") ¶ 3, Exs. A–C (showing ICE's recent decision to release Petitioner).) ICE issued the Warrant of Removal after an immigration judge ordered Petitioner removed following his release from the custody of the Minnesota Department of Corrections, where Petitioner was serving a 33-month sentence for various criminal convictions and probation violations. (AR at 7–9; O'Denius Decl. ¶ 4.) However, since June 2011, ICE has been unable to obtain the necessary travel documents from Petitioner's native country, Liberia, and, consequently, ICE has been unable to deport him. (*See* O'Denius Decl. ¶¶ 6–9, 13–14; Pet'r's Mem. at 7–8.)

Because Petitioner had been in ICE's custody for approximately six months, and ICE still had not received the necessary paperwork from Liberia, on January 5, 2012, Petitioner sought relief through the Petition. (Doc. No. 1.) Specifically, Petitioner requested that the Court issue "an Order compelling respondent to release him from custody subject to appropriate [c]onditions imposed by this Court pending any further proceedings." (Pet'r's Mem. at 8.) Respondent initially opposed the Petition on the grounds that Petitioner failed to

2

demonstrate how his continued detention, pending removal, violated the Due Process Clause of the Fifth Amendment to the United States Constitution and that it was significantly likely that Petitioner would be removed to Liberia in the reasonably foreseeable future. (Doc. No. 8, Return to Habeas Corpus Pet. and Order to Show Cause at 6–10.) On February 22, 2012, this Court ordered Respondent to supplement this opposition and provide the Court with the following: (1) the status of the issuance of a travel document by Liberia; (2) the results of ICE's review of conditions of Petitioner's custody, which was scheduled to occur no later than March 14, 2012; and (3) any support for Respondent's position that Petitioner's removal was forthcoming. (Doc. No. 12.)

On March 30, 2012, Respondent informed this Court that ICE has now released Petitioner from its custody subject to certain supervisory conditions. (Doc. No. 13 at 1; Siekert Decl. ¶ 3, Exs. B & C.) Thus, Respondent argues that the Petition is now moot because Petitioner has obtained the very relief he seeks in this proceeding and no remaining Article III case or controversy exists. (Doc. No. 13 at 2–3.)

## DISCUSSION

### I.  Mootness

"Article III mootness arises from the Constitution's case and controversy requirement: 'Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies.'" *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469

(8th Cir. 2000)).[1]  "'When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot.'"  *Id.* at 723–24 (quoting *Haden*, 212 F.3d at 469 (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994))).

Petitioner's release affects whether this Court can still grant effective relief because he has obtained the very outcome he requested through his Petition and supporting papers.  *See id.* at 724 (noting the possibility that the release of a habeas petitioner under an order of supervision mooted his appeal in the Article III sense).  However, because Petitioner was in custody when he filed his Petition, his release does not automatically render his Petition moot; whether it does depends on potentially applicable exceptions to the mootness doctrine.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Under these exceptions, the Petition should not be dismissed as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."  *Riley v. I.N.S.*, 310 F.3d 1253, 1256 (10th Cir. 2002)

---

[1] Respondent does not argue, and this Court does not address, any issue concerning "prudential" mootness, which was presented in *Ali*. 419 F.3d at 724–25.

(quoting *Chong v. District Dir., INS*, 264 F.3d 378, 384 (3d Cir. 2001)).  Because none of these exceptions applies in this case, the Petition must be denied as moot.

## II.     Application of the Exceptions to Mootness

### A.     No Collateral Consequences

The first exception applies where there is "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7.  Here, one might argue that the conditions placed on Petitioner's liberty by the Order of Supervision are collateral consequences different from his now-ended detention.  But the collateral-consequences exception does not apply where such conditions follow from the final order of removal and not from the allegedly prolonged detention itself.[2]  *See Camara v. Comfort*, 235 F. Supp. 2d 1174, 1176 (D. Colo. 2002) (cited in *Ali*, 419 F.3d at

---

[2]     Here, Petitioner has not made any challenge to the underlying order of removal.  (*See* Pet., *passim*.)  Nor could Petitioner make such a challenge in this action.  *See* 8 U.S.C. § 1252(a)(5) (providing that notwithstanding 28 U.S.C. § 2241 or other habeas provisions, "a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means of judicial review of an order of removal*"); *DePing Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 616 (2d Cir. 2007) ("[D]istrict courts may no longer review removal orders via habeas corpus."); *see also Mhanna v. U.S. Dep't of Homeland Sec. Citizenship and Immigration Servs.*, Civil No. 10-292 (JRT/LIB), 2010 WL 5141803, at *10–11 (D. Minn. Dec. 13, 2010) (assuming without deciding that a bar to readmission may constitute a collateral consequence but noting that 8 U.S.C. § 1252(a)(5) precludes a district court from exercising jurisdiction to remedy those collateral consequences).

723); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1132 (10th Cir. 2006) (holding that release from custody mooted habeas petition where the only collateral consequences arose from the removal order rather than detention); *cf. Mhanna v. U.S. Dep't of Homeland Sec. Citizenship and Immigration Servs.*, Civil No. 10-292 (JRT/LIB), 2010 WL 5141803, at *12 (D. Minn. Dec. 13, 2010) ("To the extent that the Court could construe Mhanna's request for relief as a reviewable habeas claim relating to ICE detention, however, ICE's removal of Mhanna from the United States renders any such claim moot."). As in *Camara*, the conditions placed on Petitioner's freedom by the Order of Supervision flow from his final order of removal and are not "collateral consequences of Petitioner's detention." *See Camara*, 235 F. Supp. 2d at 1176. As a result, there is no concrete and continuing injury on which this suit can be maintained. Nor does the record reflect any other non-speculative collateral consequences sufficient to sustain the Petition's justiciability under Article III.

In addition, this Court notes that the conditions ICE placed on Petitioner's release are reasonable. The following conditions apply to Petitioner's release:

- He must appear upon request for identification and for removal or deportation;

- He must appear upon request for psychiatric examination at the United States Government's expense;

- He must provide details regarding his nationality, circumstances, associations, and activities and complete travel document applications and provide ICE with a copy of correspondence with any Embassy or Consulate;

- He must not travel outside of Minnesota without notifying his deportation officer;

- He must provide written notice within 72 hours of a change of residence;

- He must report in person every three months beginning in July 2012 as required by ICE;

- He must assist ICE in obtaining necessary travel documents; and

- He must obtain work authorization, commit no crimes, continue to follow any prescribed doctors' orders, respond to call-in letters, and appear for his deportation when required.

(Siekert Decl. ¶ 3, Ex. C at 1.)  Courts have concluded that nearly identical conditions of supervised release for a removable alien satisfy due process because they are rationally related to the legitimate government interests of reducing the number of "absconding aliens" and "accounting for and being able to produce any alien who becomes removable."  See *Yusov v. Shaughnessey*, 671 F. Supp. 2d 523, 530 (S.D.N.Y. 2009) (quoting *Nguyen v. B.I. Inc.*, 435 F. Supp. 2d 1109, 1115 (D. Or. 2006)); *Zavalas v. Prendes*, No. 3-10-CV-1601-K-BD, 2010 WL 4454055, at *2 (N.D. Tex. Oct. 5, 2010) (approving similar conditions of supervised release with additional conditions of electronic leg monitoring); *see also Mahmoud v. Cangemi*, No. Civ. 05-900 (DWF/FLN), 2006 WL 1174214, at *2 (D. Minn. May 1, 2006) (concluding that the petitioner provided no evidence or legal argument that demonstrated that post-removal-order release under an order of supervision violated due process and noting that

in *Zadvydas*, 533 U.S. at 696, the Supreme Court explicitly held that release on conditions is the appropriate alternative to detention).

### B. Not Capable of Repetition Yet Evading Review

The second exception to mootness—that the issue raised is one that is capable of repetition yet evading review—is a narrow one.  "A case is 'capable of repetition' only when there is a 'reasonable expectation that the same complaining party will be subjected to the same action again.'" *Riemers v. Or.*, 863 F.2d 630, 632 (9th Cir. 1988) (quoting *Cox v. McCarthy*, 829 F.2d 800, 803 (9th Cir. 1987)).  "[T]he capable-of-repetition doctrine applies only in exceptional situations . . . where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer*, 523 U.S. at 17–18 (internal quotation marks and citations omitted) (bracketed alterations in *Spencer*).

Here, the record shows no reasonable expectation that Petitioner will be subject to another prolonged post-removal-order detention.  Respondent has been attempting to remove Petitioner for some time and has provided evidence that, once it obtains appropriate travel documents from Liberia, it will remove him forthwith.  (Siekert Decl. ¶ 3, Ex. B ("Once a travel document is obtained, you will be required to surrender to ICE for removal.  You will, at that time, be given an opportunity to prepare for an orderly departure.").)  ICE apparently believes that

obtaining a travel document is likely, but it is merely uncertain when the Liberian government will provide the necessary paperwork.  (*Id.*, Ex. A at 2 ("ICE believes a TD is likely but it is unknown when the GoL will issue.").)  There is no indication anywhere in the record that Petitioner is likely to be taken into custody for some indeterminate period pending his removal, and, as a result, the capable-of-repetition exception does not apply here.[3]

### C. Free to Resume Illegal Practice Voluntarily Ceased

The third exception to mootness can cause a general concern in any case where an alien detainee is voluntarily released after filing a habeas petition.  *See Riley*, 310 F.3d at 1257 ("We are somewhat concerned about the circumstances surrounding Appellant's release and the potential for INS to resume Appellant's detention.").  "[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."  *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) (per curiam); *Suarez-Tejeda v. United States,* 85 Fed. App'x. 711, 716 (10th Cir. 2004) (same).

Here, there is no suggestion that Respondent released Petitioner to deprive this Court of jurisdiction "by temporarily altering questionable behavior."

---

[3]     Petitioner's acknowledgment of the conditions of Release under an Order of Supervision indicates that failure to comply with the terms of the order may subject him to a fine, detention, or prosecution.  However, the capable-of-repetition exception is not typically applied when the possibility of recurrence for the appellant depends on his own wrongdoing.  *Riemers*, 863 F.2d at 632.

*City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).

On March 12, 2012, Respondent reviewed Petitioner's custody status to determine whether there was a significant likelihood of removal in the reasonably foreseeable future as required by regulation, *see* 8 C.F.R. § 241.13.  (Siekert Decl. ¶ 3 Ex. A.)  At that time, although the Petition had already been filed, Respondent reached the following conclusion:

> There has been no response from our Embassy in Liberia yet.  The delegation indicated before they departed in January that the decision to issue a TD should occur within 60–90 days.  We are currently at around the 60 day mark.  The track record with Liberia is questionable at best so anything is possible.  He was deemed to be from Liberia so that much has been determined.  Whether or not they issue is another story as the last time interviews were conducted in July 2011, we have yet to receive a response as they were deemed not to have been sanctioned.

(*Id.* at 1.)  As early as January of this year, when Petitioner filed this habeas case, Respondent had already established a timeframe within which it expected a decision to be made by the Liberian government concerning Petitioner's travel documents.  When circumstances did not play out as Respondent expected, and it became clear that the timing of Petitioner's removal was unpredictable, Respondent changed its determination that it was no longer significantly likely that Petitioner would be removed in the reasonably foreseeable future.  (*Id.* at 2.)  The decision to later release him was based not on any apparent desire to divest this Court of jurisdiction, but because Respondent can no longer say with any certainty when it expects to be able to remove Petitioner from the United States.

Under these circumstances, the voluntary-cessation exception to the mootness doctrine is inapplicable.

### D. Class Action

Finally, the exception relating to properly certified class actions is inapplicable because this matter involves no request for relief for a class of individuals.

## III. Petitioner's Current Location

In light of Petitioner's release, this Court is no longer certain that Petitioner's address on file with the Clerk of Court is correct. The conditions Respondent has placed on Petitioner's release suggest that Respondent is capable of locating Petitioner to provide him with a copy of this Report and Recommendation in a timely manner. Respondent, his counsel, or both, are therefore directed to make reasonable efforts to provide Petitioner with a copy of this Report and Recommendation on or before April 23, 2012.

## RECOMMENDATION

For the reasons stated above, no case or controversy exists under Article III and this action is moot. Accordingly, this Court **HEREBY RECOMMENDS** that:

1. The Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2241 from a Person in the Custody of the Immigration and Customs Enforcement Agency (ICE) (Doc. No. 1), be **DENIED**; and

2. This action be dismissed.

Date: April 17, 2012

    *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. Loc. R. 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by May 7, 2012, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.